# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7730 | **DATE** | 2/8/2012 |
| **CASE TITLE** | Shire LLC vs. McAndrews Held & Malloy, Ltd. *et al.* | | |

**DOCKET ENTRY TEXT**

Motion hearing held. Shire's motion to enforce this Court's order [27] is granted in part as explained below. An updated privilege log and any relevant documents should be produced by Tuesday, February 14th and the three depositions should be re-taken by Friday February 17th.

■[ For further details see text below.]  Docketing to mail notices.

00:10

## STATEMENT

    Before the court are two motions -- Shire's motion to enforce this Court's order and respondents' motion for a protective order -- both of which have been fully briefed with each side filing three briefs. In our December 9th order, we granted Shire's motion to enforce three subpoenas arising out of a Virginia patent case set to go to trial on February 21, 2012. In the Order, we held that Shire could take discovery regarding one issue -- respondents' alleged involvement in the copying of patents now owned by Shire. This question focused on the "who, what, where, when, how, and why" of the drafting process of four patent applications. On January 6, 2012, Shire deposed attorneys Ma and Groetken, with Groetken testifying as a 30(b)(6) witness and then in his individual capacity. Respondents also provided a privilege log but produced no relevant documents. The gist of Shire's motion is that respondents were overly aggressive in asserting privilege objections in response to our prior order. For the most part, we agree with Shire's arguments. As we cautioned previously, we have not been involved in overseeing the discovery in this case, and the Judge in Virginia will be in a better position to assess the relevance and admissibility of this evidence at trial.

    **Depositions.** It is undisputed that respondents asserted many privilege objections and instructed the witnesses not to answer most of the key questions, 50 times in Ma's deposition and 30 times in Groetken's. In addition, the two witnesses were not especially cooperative in the process. For example, Mr. Ma unnecessarily belabored the definition of basic concepts such as "preparing," "assisting," "drafting," and even "speaking." (Ex.2 at 33-34, 40.) And as to the few questions the witnesses were allowed to answer, they often claimed they could not recall even basic information about their client. The upshot is that, contrary to respondents' claim that the two witnesses provided "significant" and "substantial" testimony (Resp. Br. at 1, 3), they provided only a few conclusory sentences of information. The seven and half hours of deposition testimony can be boiled down to the following assertions: the two attorneys and Dr. Mickle worked collaboratively in drafting the patent applications; Mr. Ma probably prepared the first draft; and at some undefined point in this process the two attorneys became aware of the '486 patent application. In short, the relevant testimony was essentially the same as the paragraph-long prepared statement Mr. Groetken read at various points in his deposition. This is not what we envisioned in our prior order.

    Respondents claim they sufficiently and fully answered the "who, what, where, when, how and why"

| STATEMENT |
|---|

questions, but we disagree. We cite two examples. First, the two attorneys never answered the "when" question. The closest they came was when Mr. Groetken was asked when his firm was first retained by KemPharm. (Ex. 1 at 22-23.) He looked at the privilege log someone else in his firm had prepared and noted that the first entry was an email communication on Oct. 23, 2006 and then reasoned from this observation that his firm must have been retained "at least by" that date. When asked whether he met with Dr. Mickle before then, Mr. Groetken said yes but then refused to answer any more questions. Mr. Groetken was asked if the firm had a retention agreement, which at least would help pinpoint the beginning of the relationship. Mr. Groetken testified that he did not know whether his firm had entered into such an agreement; he did not know where such an agreement (assuming it exists) would be stored at his law firm; and he finally said that he could not remember whether a week or so before his testimony he had looked for such an agreement in response to the subpoena request. (Ex. 1 at 27-29.) Later in the deposition, counsel for respondents said that he spoke with Mr. Groetken during a break in the deposition and was told that Mr. Groetken now remembered that the a retention agreement (again, assuming it exists, which Mr. Groetken does not seem to know) would be found "in one of the areas we searched for responsive documents," although it is not now clear what those areas are (Ex. 1 at 45.) These answers do not inspire confidence that a good faith effort was made to answer the questions or search for documents. For this reason, we will order respondents to produce time records, billing statements, and invoices.

Second, respondents refused to give any details about who drafted which paragraphs of the patent applications, and they refused to give a straight answer about the basic question of whether they copied any portion of the '486 patent. (It is not clear why respondents refuse to answer these factual questions given that they repeatedly argue in their briefs that there is nothing wrong with copying certain information.) In their response brief, respondents state that the drafters became "aware of" the '486 patent "in connection with" drafting the '375 application. This answer hedges the issue of when they became aware and whether they copied information. Looking at the specific deposition testimony, it appears that the two witnesses gave conflicting answers. Mr. Groetken testified that the three drafters were aware of the '486 patent before drafting the '375 provisional application (Ex. 1 at 80) while Mr. Ma testified that he was *not* aware (Ex. 2 at 52).

Accordingly, we find that respondents should answer the copying questions (Request No. 7 in the response brief) -- *i.e.* the who, what, where, when, and how. As for the why questions, these are more likely to call for the disclosure of privileged information. Therefore, these depositions should be re-taken, and Mr. Ma should (at a minimum) answer the questions on pp. 45, 59, 62, 70, 72, 73, 80, and 84 (Ex. 2) and Mr. Groetken should answer the questions on page 19, 22-23, 26, 32-33, 41, 42, 43, 60 (Ex. 1). This list is illustrative, and related follow-up questions should be answered as well. Finally, as to respondents' argument that the individual depositions should be limited to the same copying issue as the Rule 30(b)(6) deposition (Request No. 8 in the response brief), we agree. That was the intent of our prior ruling.

**Documents.** The parties disagree about whether various specific types of documents should be produced or placed on a privilege log. Each side makes vigorous arguments as more fully set out in their briefs. As noted above, we find that billing records/invoices/time sheets (Request No. 1) should be produced. These may help resolve questions witnesses were unable to answer, including pinpointing the date the client relationship began, who drafted what part of the patent applications, and how much time was spent in the process. Similarly, respondents should check again for retention/engagement letters (Request No. 2), which also could shed light of the "when" question. We also agree with Shire that the document search and privilege log should not be limited to 2006 and only one patent application but instead should cover the years 2006 to 2010 and four patent applications.

As for prior art and background information (Request No. 3), respondents focus on the issue of invention records submitted by an inventor for the purpose of obtaining legal advice. They rely on the Federal Circuit's decision in *In Re Spalding*, 203 F.3d 800, 805-06 (Fed. Cir. 2000) for the proposition that such communications are privileged if the "overall tenor" is a request for legal advice. In their reply, Shire agrees

| STATEMENT |
|---|

with the general holding of *Spalding* but complains that respondents did not even list these documents on their privilege log and asserts that respondents must independently establish privilege for each document on its log and that even "invention disclosures" may not be privileged if they were not prepared for the purpose of obtaining legal advice. We agree that these documents should at least be put in the privilege log.

As for the request for redacted emails and to require the listing all attachments on the privilege log (Requests Nos. 4 and 5), respondents claim the existing disclosures are sufficient. In reply, Shire points out that the parties obviously disagree about the privilege scope. Given respondents' aggressive approach to the privilege issue in the depositions, we are persuaded by Shire's arguments and will grant this request.

As for draft patent applications (Request No. 6). Again relying on *Spalding*, respondents argue that draft patent applications communicated between an inventor and attorney are privileged if the "overall tenor" of the document relates to legal advice regarding patent protection. (Resp. at 11-12.) In its reply, Shire complains that respondents improperly withheld all draft patent applications and invention disclosures from its privilege log. Shire argues that this failure to properly log such documents should result in a finding of waiver. We are not persuaded by this latter argument and deny this request to produce the documents, but they should be included on a privilege log.

Given the trial date, we will set a short deadline to complete this remaining discovery. An updated privilege log and any relevant documents should be produced by Tuesday, February 14th and the three depositions should be re-taken by Friday February 17th.